# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Raytheon Company | )     ASBCA No. 57743 |
| | ) |
| Under Contract No. N00024-04-C-6101 | ) |

APPEARANCES FOR THE APPELLANT:       Karen L. Manos, Esq.
          John W.F. Chesley, Esq.
            Gibson, Dunn & Crutcher LLP
            Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Arthur M. Taylor, Esq.
            DCMA Deputy Chief Trial Attorney
          Stephen R. Dooley, Esq.
            Senior Trial Attorney
          Alexander M. Healy, Esq.
          Kathleen P. Malone, Esq.
            Trial Attorneys
            Defense Contract Management Agency
            Boston, MA

## OPINION BY ADMINISTRATIVE JUDGE SCOTT
## ON THE PARTIES' CROSS-MOTIONS FOR RECONSIDERATION

The parties have cross-moved for reconsideration of parts of the Board's decision in *Raytheon Company*, ASBCA No. 57743 *et al.*, 17-1 BCA ¶ 36,724 (*Raytheon II*),[1] in which, as pertinent to the instant motion, we denied Raytheon's appeal from the corporate administrative contracting officer's (CACO's) assessment, and non-waiver, of penalties and interest concerning lobbying costs and we sustained Raytheon's appeal from the government's claim for what is sometimes, and herein, referred to as "level one" or "single" penalties and interest under Federal Acquisition Regulation (FAR) 42.709-1(a)(1) regarding aircraft fractional lease costs. Raytheon asks the Board to reconsider its ruling that salary costs are part of expressly unallowable lobbying costs.

The government moves for reconsideration of the Board's decision that Raytheon's aircraft fractional lease costs were not expressly unallowable and subject to level one penalties and interest. The government also contends that what is sometimes,

---

[1] In the decision the parties have asked the Board to reconsider, the Board denoted its prior decision concerning the parties' motions to strike, *Raytheon Company*, ASBCA No. 57743 *et al.*, 16-1 BCA ¶ 36,335, as "*Raytheon I.*"

and herein, referred to as "level two" or "double" penalties and interest, are appropriate under FAR 42.709-1(a)(2) and other FAR and statutory provisions.

Each party alleges that the Board made clear errors of law but each denies the errors alleged by the other party and asserts that the rulings challenged by the other party were correct. [2]

## DISCUSSION

The Board applies the following standards in deciding a motion for reconsideration:

> [W]e look to whether the movant has presented newly discovered evidence, mistakes in findings of fact, or errors of law. *Kellogg Brown & Root Services, Inc.*, ASBCA Nos. 57530, 58161, 16-1 BCA ¶ 36,554 at 178,039. A reconsideration motion is not an opportunity to reargue issues previously raised and decided, or to advance arguments that should have been presented in an earlier proceeding. *Precision Standard, Inc.*, ASBCA No. 59116, 15-1 BCA ¶ 36,155 at 176,445; *Avant Assessment, LLC*, ASBCA No. 58867, 15-1 BCA ¶ 36,137 at 176,384. A party moving for reconsideration "must show a compelling reason" why the Board should alter its decision. *Precision Standard*, 15-1 BCA ¶ 36,155 at 176,445.

*Supreme Foodservice, GmbH*, ASBCA No. 57884 *et al.*, 17-1 BCA ¶ 36,740 at 179,092.

### Appellant's Motion for Reconsideration

#### I. The Parties' Contentions

Raytheon alleges that the Board's decision in *Raytheon II*, that salary costs associated with unallowable lobbying are expressly unallowable, is irreconcilable with its prior binding decision in *Raytheon Co.*, ASBCA No. 57576 *et al.*, 15-1 BCA ¶ 36,043 (the *CAS 405 Decision*), which granted summary judgment to Raytheon that its bonus and incentive compensation (BAIC) costs were not expressly unallowable lobbying costs. Raytheon further alleges that the Board's decision in *Raytheon II* was faulty because directly associated costs, such as salary expenses, differ from expressly unallowable costs, such as certain lobbying costs, and are not themselves expressly unallowable. Raytheon also contends that FAR 42.709-1(a)(1)'s penalty provisions apply only to

---

[2] We have reviewed all of the parties' arguments, even if we have not addressed them.

2

indirect costs that are "expressly unallowable under a cost principle in the FAR, or an executive agency supplement to the FAR, that defines the allowability of specific selected costs." Raytheon asserts that the only such cost principles are those set forth in FAR 31.205, Selected costs. With regard to FAR 31.201-6, Accounting for unallowable costs, it posits that subsection (e)(2), which treats as directly associated costs certain "[s]alary expenses of employees who participate in activities that generate unallowable costs," is not such a cost principle.

The government responds that the *CAS 405 Decision* fully supports the Board's decision in *Raytheon II* and that the BAIC costs at issue in the former decision are clearly distinguishable from the lobbying salary costs at issue here. The government further asserts that all of FAR Part 31, Contract Cost Principles and Procedures, applies in assessing cost allowability, not just FAR 31.205. The government cites to FAR 31.204(c), which provided that FAR 31.205 does not list every cost and the absence of a cost item on the list is not dispositive of its allowability.[3] Raytheon agrees that all of FAR Part 31's principles and standards are relevant in assessing allowability, but it contends that FAR 31.201-6 is part of general allowability principles and not a cost principle that defines the allowability of "specific selected costs," as pertinent to penalty assessment under FAR 42.709-1(a)(1).

The government also rejects Raytheon's contention that "directly associated costs" cannot be "expressly unallowable costs." The government points out that, under FAR 31.201-6(a), "[w]hen an unallowable cost is incurred, its directly associated costs are also unallowable," and that FAR 31.205-22, Lobbying and political activity costs, expressly disallows "costs associated with" certain lobbying, which is broader than, and encompasses, "directly associated" costs. Thus, it is apparent that directly associated costs can be expressly unallowable. The government further asserts that, regardless of the "directly associated" issue, salary costs are integral to lobbying and are included within FAR 31.205-22's strictures.

## II. Discussion of Raytheon's Motion for Reconsideration

The CACO assessed penalties and interest concerning salary costs associated with unallowable lobbying costs pursuant to FAR 42.709-1(a)(1), which states:

> (a) The following penalties apply to contracts covered by this section:
>
> (1) If the indirect cost is expressly unallowable under *a cost principle in the FAR, or an executive agency*

---

[3] FAR 31.204(c) has been recodified as FAR 31.204(d), which contains the same language.

*supplement to the FAR, that defines the allowability of*
*specific selected costs,* the penalty is equal to—

(i) The amount of the disallowed costs allocated to
contracts that are subject to this section for which an indirect
cost proposal has been submitted; plus

(ii) Interest on the paid portion, if any, of the
disallowance. [Emphasis added]

Raytheon alleges that FAR 31.205 contains the only cost principles that define the
"allowability of specific selected costs" and that the U.S. Court of Appeals for the
Federal Circuit so held in *Boeing North American, Inc. v. Roche*, 298 F.3d 1274, 1285
(Fed. Cir. 2002) (app. reply at 9). However, FAR 42.709-1(a)(1) refers to "a cost
principle in the FAR, or an executive agency supplement to the FAR, that defines the
allowability of specific selected costs." It does not limit its coverage to cost items listed
in FAR 31.205, which the drafters could have done if that were their intent.

Further, the court's discussion in *Boeing* is contrary to appellant's contention. The
court noted:

Although the FAR § 31.205 subsections covering
selected costs are extensive, FAR § 31.204 makes clear that
"[s]ection 31.205 does not cover every element of cost.
Failure to include any item of cost does not imply that it is
either allowable or unallowable." In such situations,
FAR 31.204[d] instructs us: *"The determination of*
*allowability shall be based on the principles and standards in*
*this subpart and the treatment of similar or related selected*
*items."*

298 F.3d at 1285. FAR 31.205 itself invokes other FAR provisions. FAR 31.205-6(a)
states that "[c]ompensation for personal services is allowable subject to the following
general criteria and additional requirements contained in other parts of this cost
principle." FAR 31.205-6(a)(5) refers to FAR 31.2 as a whole, stating that "[c]osts that
are unallowable *under other paragraphs of this Subpart 31.2* are not allowable under this
subsection 31.205-6 solely on the basis that they constitute compensation for personal
services" (emphasis added).

FAR 31.205-22, Lobbying and political activity costs, states that "(a) Costs
*associated with* the following activities are unallowable" (emphasis added). The listed
activities include certain lobbying efforts. While FAR 31.205-22 does not name
compensation or salary, per FAR 31.204(c) this is not dispositive of allowability. By

4

application of common sense, it is obvious that salary costs are "associated with" unallowable lobbying costs. Moreover, under FAR 31.201-6(e)(2), subject to materiality and other exceptions, salary costs are specifically named as costs "directly associated" with unallowable activities, which include lobbying: "Salary expenses of employees who participate in activities that generate unallowable costs shall be treated as directly associated costs to the extent of the time spent on the proscribed activity." The salary costs directly associated with the unallowable lobbying costs are themselves unallowable as provided in FAR 31.201-6(a), which defines a "directly associated cost" as:

> [A]ny cost which is generated solely as a result of incurring another cost, and which would not have been incurred had the other cost not been incurred. *When an unallowable cost is incurred, its directly associated costs are also unallowable.* [Emphasis added]

*See similarly* FAR 31.001, Definitions, quoted below.

Reading FAR 31.201-6(a), FAR 31.201-6(e)(2) and FAR 31.205-22(a) together, the salary costs of Raytheon's employees who engaged in proscribed lobbying activities are named and stated to be unallowable. Therefore, they are expressly unallowable under cost principles in the FAR that define the allowability of specific selected costs and are subject to a level one penalty under FAR 42.709-1(a)(1). The FAR does not distinguish in this respect between unallowable costs and unallowable directly associated costs. Raytheon has not directed us to any persuasive authority in support of its contention that unallowable directly associated costs cannot be expressly unallowable costs.[4]

Finally, Raytheon's allegation that the Board's decision in *Raytheon II* is irreconcilable with the *CAS 405 Decision*, said to be binding contrary authority, is incorrect. First, in the latter decision, unlike here, lobbying salary costs were not in question and the Board did not issue any binding holdings regarding those costs. Rather, the Board decided matters pertaining to the costs of BAIC and stock awards under Raytheon's long-term performance plan.

---

[4] On August 7, 2018, Raytheon filed a Supplemental Citation of Authority in Support of Raytheon's Motion for Reconsideration, which refers to a Department of Defense Instruction concerning cost allowability and penalties, said to bolster Raytheon's position that FAR 31.201-6 is not a cost principle that defines the allowability of specific selected costs. On August 8, 2018, the government objected. Among other things, it disputed that the Instruction was "authority" and moved to strike on the ground that Raytheon had impermissibly attempted to reopen the closed record. We need not decide the government's motion. We have reviewed the portions of the Instruction filed by Raytheon and they do not affect our decision.

5

In any event, the Board in the *CAS 405 Decision* distinguished salaries from BAIC. *CAS 405 Decision*, 15-1 BCA ¶ 36,043 at 176,050. Regarding whether BAIC costs were expressly unallowable under various cost principles, the Board discussed FAR 31.205-1, Public relations and advertising costs, which includes salaries and fringe benefits, *inter alia*, as unallowable, subject to exceptions. *See* FAR 31.205-1(c), (d). The Board stated that:

> BAIC cost is an item or type of cost, but it is not specifically named and stated as unallowable under FAR 31.205-1. While portions of "salaries" and "fringe benefits" are stated as unallowable, the government, as claimant, has not shown that BAIC constitutes either one. BAIC and salary are different types of compensation.

*CAS 405 Decision*, 15-1 BCA ¶ 36,043 at 176,050. With respect to whether the BAIC costs were otherwise unallowable the Board again stated that the government had not shown that BAIC costs were equivalent to or subsumed under "salaries" or "fringe benefits," but the Board opined that BAIC costs might be unallowable as directly associated costs to unallowable salary costs. *Id.* at 176,051-52. The Board did not grant summary judgment to either party on that issue due to material factual disputes.

Regarding FAR 31.205-22's lobbying cost principle, the Board in the *CAS 405 Decision* stated that "[n]either 'BAIC' cost nor 'compensation' cost is specifically named and stated as unallowable under this cost principle, nor are such costs identified as unallowable in any direct or unmistakable terms." 15-1 BCA ¶ 36,043 at 176,050. It concluded that BAIC costs were not expressly unallowable under FAR 31.205-22 but that they were unallowable under that cost principle as compensation associated with unallowable lobbying activity. *Id.* at 176,050, 176,052. FAR 31.001 defines "compensation for personal services " as "all remuneration paid currently or accrued, in whatever form and whether paid immediately or deferred, for services rendered by employees to the contractor." However, the Board did not conclude in the *CAS 405 Decision* that no compensation costs, regardless of type, were expressly unallowable under FAR 31.205-22. If it had intended such a broad ruling, it could have said so and its further discussion about BAIC costs would not have been necessary.

In *Raytheon II* the Board was considering the salary portion of lobbying costs. Unlike BAIC costs, as delineated in *Raytheon II* and above, the FAR specifically denotes salary costs as unallowable when they are associated with unallowable lobbying costs, as in the instant case. FAR 31.201-6(e)(2). That FAR provision does not include BAIC costs or other forms of compensation, thereby distinguishing salary costs from other forms of compensation. Raytheon cannot reasonably assume otherwise and, in practice, it did not. It treated its lobbying salary costs as unallowable. *See Raytheon II*, 17-1 BCA ¶ 36,724 at 178,850. In sum, Raytheon's lobbying salary costs are expressly unallowable and subject to the level one penalty assessed by the CACO.

6

We find no error of law or other reason to reconsider our decision in *Raytheon II* regarding lobbying salary costs and we deny Raytheon's motion for reconsideration.

## The Government's Motion for Reconsideration

### I. The Parties' Contentions

The government contends that the Board made clear errors of law when it ruled in *Raytheon II* that Raytheon's aircraft fractional lease costs were not expressly unallowable under the parties' February 2005 Advance Agreement and thus were not subject to penalties and that, even if they were expressly unallowable, penalties were not warranted because the pertinent penalty statute and regulations do not apply to costs that are expressly unallowable under a contract. The government asserts that the Board mistakenly relied upon only selected portions of Title 10 U.S.C. § 2324(b) and FAR 42.709 in reaching its decision and it ignored the plain language of 10 U.S.C. § 2324(b)(2), FAR 42.709-3, FAR 31.001, and FAR 52.242-3(e), said to require that the government assess penalties in the case of costs previously determined to be unallowable, such as by the parties' agreement. For example, FAR 31.001 states that: "'Expressly unallowable cost' means a particular item or type of cost which, under the express provisions of an applicable law, regulation, or contract, is specifically named and stated to be unallowable." The government alleges that the parties determined in the February 2005 Advance Agreement that Raytheon's aircraft fractional lease costs at issue were unallowable. Therefore, they were expressly unallowable and subject to penalties.

The government concludes that, even if the aircraft fractional lease costs were not expressly unallowable, penalties would still apply because "costs determined to be unallowable by prior determination, agreement, or contract, do not even have to be 'expressly unallowable' to be subject to penalty" (gov't opp'n & cross-mot. at 14). The government alleges that penalties are warranted because the parties agreed in the February 2005 Advance Agreement, prior to Raytheon's submission of its cost proposal, that the costs "would not be charged to the Government" (*id.* at 15).

Raytheon responds, *inter alia*, that the Board correctly held that none of the aircraft fractional lease costs at issue were expressly unallowable and subject to penalty. Raytheon states that the government's statutory and regulatory citations for the proposition that a contracting officer must assess a penalty on costs determined to be unallowable by virtue of the parties' agreement pertains to level two/double penalties under FAR 42.709-1(a)(2), and not to the level one/single penalties under FAR 42.709-1(a)(1) that the CACO assessed here. Raytheon further asserts that the Board's analysis that an advance agreement cannot create expressly unallowable costs subject to penalties was correct and in accord with 10 U.S.C. § 2324(b)(1), FAR 42.709-1(a)(1) and FAR 42.709-3(a). Raytheon adds that the Board's

7

conclusion that the February 2005 Advance Agreement did not specifically name aircraft fractional lease costs as unallowable in terms of the FAR was also correct.

## II. Discussion of the Government's Motion for Reconsideration

Regarding aircraft fractional lease costs, the CACO assessed level one/single penalties against Raytheon under FAR 42.709-1(a)(1). *Raytheon II*, 17-1 BCA ¶ 36,724, finding 16. As noted, that FAR provision states that a penalty applies if the indirect cost at issue is expressly unallowable under "a cost principle in the FAR, or an executive agency supplement to the FAR, that defines the allowability of specific selected costs." It does not include the terms "contract," "agreement," or the like.

FAR 42.709-1(a)(1) and (2) are derived from Title 10 U.S.C. § 2324(a), Indirect Cost that Violates a FAR Cost Principle, and (b), Penalty for Violation of Cost Principle. Subsection 2324(a) covers an indirect cost that is unallowable because it "violates a cost principle in the [FAR] or applicable agency supplement to the [FAR]." It does not include the terms "contract," "agreement," or the like. Under subsection (b)(1), pertaining to level one penalties, if an agency head determines that a submitted indirect cost is expressly unallowable under a "cost principle" referred to in subsection (a), then the agency head is to assess a penalty equal to the amount of the disallowed costs plus interest. Again, for level one penalties, the statute does not use the term "contract," "agreement," or the like. The FAR 52.242-3, Penalties for Unallowable Costs clause, incorporated into the contract, is to the same effect at subsections (b) through (d). *See Raytheon II*, 17-1 BCA ¶ 36,724, finding 2. The aircraft fractional lease costs at issue were not stated to be unallowable under a FAR cost principle or executive agency supplement to the FAR.

In addition to costs that are unallowable under the express provisions of an applicable law or regulation, FAR 31.001's definition of "Expressly unallowable cost," quoted above, includes costs which, under the express provisions of an applicable contract, are specifically named and stated to be unallowable. The plain language of the statutory and regulatory provisions regarding level one penalties does not include contracts. The contract aspect of the definition applies when level two, or double, penalties are at issue. Double penalties apply if the agency head determines that a contractor's proposal for settlement of indirect costs "includes a cost determined to be unallowable in the case of such contractor before the submission of such proposal." 10 U.S.C. § 2324(b)(2); *see similarly* FAR 42.709-1(a)(2), FAR 52.242-3(e). The government asserts that the parties' February 2005 Advance Agreement constituted such a determination. It did not. As more fully explicated in *Raytheon II*, 17-1 BCA ¶ 36,724 at 178,847, while Raytheon agreed not to charge a portion of its aircraft fractional lease costs to the government, it did not concede that they were unallowable under the FAR.

8

In any event, the CACO did not assess penalties under FAR 42.709-1(a)(2) and the government did not pursue level two penalties during the hearing. *Raytheon II*, 17-1 BCA ¶ 36,724 at 178,846. The government belatedly seeks to do so in its motion for reconsideration, which is not a proper vehicle in which to assert a new claim. We are not persuaded by the government's arguments, couched in a footnote, that:

> It is of no moment that the Final Decision at issue failed to cite FAR 42.709-1(a)(2). The Board must review the Final Decision *de novo*, and simply cannot ignore the plain language of the statutes and regulations mandating penalties based upon "a determination or agreement of unallowability".... Equally, it is irrelevant that the Government did not revise its claim to seek "double penalties" pursuant to FAR 42.709-1(a)(2) during its case in chief regarding entitlement.... [Q]uantum issues were not even before the Board during trial. Moreover, in no case can a minor mistake in the calculation of the Government's demand for damages negate the clear regulatory framework, as well as a finding of entitlement based upon such framework.

(Gov't opp'n & cross-mot. at 14 n.4)

The assessment of penalties is not a mere matter of quantum, but rather involves entitlement under the statutory and regulatory scheme. A claim for level two penalties is separate from a claim for level one penalties. It is not up to the Board to fashion a claim on behalf of the government that it did not make. That is not part of *de novo* review. *See Fiber Materials, Inc.*, ASBCA No. 53616, 07-1 BCA ¶ 33,563 at 166,234 (Board declined to address level two penalty claim that contracting officer did not make.). There is no proper government claim for double penalties before us, as required by the Contract Disputes Act, 41 U.S.C. § 7103(a)(3), and we lack jurisdiction to entertain such a claim.

We find no error of law or other reason to reconsider our decision in *Raytheon II* regarding aircraft fractional lease costs and we deny the government's motion for reconsideration.

9

## DECISION

We deny the parties' cross-motions for reconsideration.

Dated: August 28, 2018

CHERYL L. SCOTT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

DAVID D'ALESSANDRIS
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 57743, Appeal of Raytheon Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10